ISAAC J. CUMMINGS

*vs.*

LARS THOMPSON.

In an action upon a promissory note by an *indorsee* against the maker, proof may be given by the latter, where the facts are pleaded, that the note was obtained from him through fraud of the payee, and upon such proof, the indorsee is required to show himself to be a holder *bona fide,* and for a valuable consideration.

In such action, if a note and contract between the maker and payee are parts of the same transaction, and the contract enters into the consideration of the note, so that the note is *without consideration* if the contract is void, then, if through the fraud of the payee, the contract is void, the fraud taints the consideration of the note, and proof thereof calls upon the plaintiff, an indorsee, to show that he is a holder *bona fide,* and *for value*; and if in addition to the allegation of fraud of the payee in such contract, the answer alleges that the indorsees, including the plaintiff, at the time of the transfer of the note had notice that it was obtained by such fraud, and without consideration, the defendant may prove such fraud, and notice, in the first instance, as a complete defence to the note, as against such indorsee, plaintiff.

When fraud is intended to be set up in a pleading, a general allegation of fraud is insufficient; the material facts constituting the fraud must be stated; but a general statement of the matters of fact constituting the fraud is all that is required. It is not necessary to charge minutely all the circumstances which may conduce to prove the general charge, for these circumstances are properly matters of evidence, which need not be stated in order to let them in as proof.

In an action on a note by an indorsee against the maker, the defence set up was fraud on the part of the payee, and want of consideration in making the note. The answer alleged that a certain verbal agreement was made between the defendant, maker, and one Ensign, payee of the

Cummings v. Thompson.

note; that at the time of making this agreement, Ensign, the payee in the note, " represented that a paper which he presented to the defendant for his signature was in accordance with the said verbal contract, and in pursuance thereof, and only made the defendant liable to pay him the sum of two hundred dollars when one-half the profits on the sale of the said seeder and cultivator should in the aggregate amount to that sum ; that the said representations were intentionally false, and by the said Ensign intended to deceive and mislead the defendant ; and the defendant misled and deceived thereby, and relying thereon, signed the paper presented to him as aforesaid, which is the promissory note set out in the complaint." *Held*, that the representations in regard to the note must be taken to be representations as to the legal effect of the note, and not as to the contents of the writing, and are not sufficient to constitute a fraud in law.

The answer further alleged, that, " at the time of signing said note, a writing was signed by said Ensign and the defendant, which purported to be the contract between them as to the terms of defendant's agency in the sale of said seeders, which said contract is hereto attached marked exhibit ' A ;' that the contract as made and agreed upon between the parties, was the verbal contract above referred to, and the writing aforesaid does not truly set forth the said contract; that said Ensign fraudulently and intentionally misread said writing to defendant, and misstated to him the contents thereof, and the defendant relying and believing said misstatements as to the contents of the writing, and his reading of the said writing, signed the same; that he did so under a misapprehension of its contents, and misled by the false and fraudulent practices of said Ensign as aforesaid."

The verbal contract set up in the answer is essentially different from the written instrument. If this verbal agreement was the real contract entered into between the parties, the entire want of consideration of the note would be established. *Held*, 1. That the verbal agreement and the execution of the note and written instrument are one entire transaction.

2. That, the representations as to the written instrument, refer to the contract in fact, that is, to the very words and contents of the instrument, and not to its legal effect, and that the facts alleged constitute an actual fraud on the part of Ensign.

3. That under the allegations in the answer, it was competent for the defendant to prove the manner of the misreading; the particular representations made by Ensign, and all the circumstances surrounding the parties; also that it was competent for the defendant, under these allegations, to prove that the defendant was unable to read the English

language, or could not without great difficulty, and taking much time, read the contract.

4. That as the answer not only alleges want of consideration in the note, and fraud on the part of the payee in obtaining it, but also avers notice thereof to indorsees, including the plaintiff, at the time of the transfer of the note, the evidence of the fraud was admissible, irrespective of notice, for the purpose of requiring the plaintiff to prove himself a holder of the note *bona fide* and for value; and followed by proof of notice, as a complete defence to the note in the hands of the plaintiff.

The complaint in this action, which was brought in the district court for Winona county, alleged substantially that defendant being indebted to one G. Ensign, executed his promissory note to him for $200; that Ensign sold, transferred and delivered the note, before maturity, to the firm of Grant & Lalor, for value, who also, for value, sold and transferred the note to plaintiff before maturity. The defence was, that the note was obtained from defendant by the payee, through fraud, and without any consideration, and that the several assignees had notice thereof. The entire answer appears in the opinion, except the terms of a verbal contract in regard to the sale of certain "seeders and cultivators," and a written contract in regard to the same, which is attached to the answer as exhibit 'A,' concerning which, it is only material to know that they were essentially different. Certain evidence was offered by the defendant, and rejected by the court which also appears in the opinion. The jury were directed by the court to bring in a verdict for the plaintiff, and from the judgment entered thereon, the defendant appeals to this court.

THOMAS WILSON, for Appellant.

The following legal propositions I think to be the law and to be decisive of this case in favor of appellant.

Cummings v. Thompson.

I.   In an action upon a negotiable promissory note brought by a purchaser thereof, before maturity, in good faith and for a valuable consideration, against the maker, the latter may prove as a defense that when he signed it, it was represented to him and he believed it to be a contract entirely different in character.

*Vallete v. Parker*, (argument of counsel,) 6 *Wend.* 615; 1 *Parsons on Bills and Notes*, 114; *Whitney v. Snyder*, 2 *Lansing*, 477; *Foster v. McKinnon*, 38 *Law Journal, R. new series*, 310.

It was error therefore in the court to refuse to hear the evidence offered.

II.   In a suit on a promissory note fraudulent in its inception or fraudulently put into circulation, the defendant may prove the fraud, and that done, the burden is on the plaintiff to show that he came into possession under such circumstances as entitle him to recover, i. e., fairly, without knowledge of the fraud and for value.

*Worcester County Bank vs. Dorchester &c.*, 10 *Cush.* 488; *Monroe vs. Cooper*, 5 *Pick.* 412; 2 *Parsons on Bills and Notes*, 438, and note Ib. 437; *Perrin vs. Noyes*, 39 *Maine*, 384; *Southwick vs. Ely*, 15 *N. H.* 541; 1 *Parsons on Bills and Notes*, 187–8; *Bailey vs. Bidwell*, 13 *Mees. and W.* 75; *Home vs. Kasper*, 5 *Binney*, 489; *Beltzhoover vs. Blackstock*, 3 *Watts*, 20; *Vallete vs. Parker*, 6 *Wend.* 6, 15; *Smith vs. Braine*, 16 *Ad. and El. N. S.* 244; *Woodhull vs. Holmes*, 10 *John.* 231; *Cathin vs. Hansen*, 1 *Duer*, 309; 2 *Greenleaf's Evidence*, sec. 172; *McKesson vs. Stanbury*, 3 *Ohio S. R.* 156; *Hawey vs. Towers*, 4 *Eng. L. and Eq.* 531; *Sistermans vs. Field*, 9 *Gray*, 331, *Ib.* 335 and cases cited.

The court therefore should have admitted the evidence offered, and erred in instructing the jury to return a verdict for plaintiff.

III.   Unless a note is taken for a valuable consideration in good faith, and without notice, the holder is considered in

privity with the indorser, and any defence may be set up against the former that would be available against the latter or against the payee.

1 *Am.* " *Lead. Cases,*" (4 *Ed.*) 334, 335, 336, *and cases cited; Lawrence vs. Stonington Bank,* 6 *Conn.* 521; *Munson vs. Cheesborough,* 6 *Blackf.* 17; 1 *Parsons on Bills and Notes,* 254, 255 *and* 256; *Story on Promissory Notes, sec.* 190.

Hence the court erred in refusing to permit us to prove that this note was obtained fraudulently and without consideration. That Grant & Lalor took it with notice of its fraudulent inception and of the want of consideration therefor, and that it had never been transferred to the plaintiff, and that he paid no value therefor.

IV.   The collection of a promissory note *obtained by fraudulent* representations either as to its language or purport, can not be enforced except by a *bona fide* holder for value, who took it before dishonor.

See authorities cited under sub. 2 of this brief, and 2 *Parsons on Contracts,* 770, 78–9.

*Adams' Equity,* 176 *et seq.;* 1 *Story's Eq. sec.* 191–2, *and note* 8; *Broadwell vs. Broadwell,* 1 *Gilman,* 599, *Ib.* 608; *Cathcart vs. Robinson,* 5 *Peters,* 264; 2 *Leading Cases in Eq.* 680–1; *Ib.* 670 *et seq.; Lyson vs. Pasimore,* 2 *Barr.* 122; *Snyder vs. May,* 7 *Harris,* 239; *Jackson vs. Hayner,* 12 *John.* 469; *Chestnut Hill Res. vs. Chase,* 14 *Conn.* 123; *Doe vs. Bennett,* 8 *Car and Payne,* 124.

V.   Even a mistake as to the legal effect of a writing will be relieved against.

*Clayton vs. Freet,* 10 *Ohio S.* 544, *and cases there cited; Canedy vs. Marcy,* 13 *Gray,* 373; *Hunt vs. Rousmainer &c.,* 8 *Wheat.* 174; *Evants vs. Strode,* 11 *Ohio R.* 480.

A *fortiori* fraud.   *Broadwell vs. Broadwell.*

The evidence offered by defendant to show that he could

Cummings v. Thompson.

not read the note and contract, should have been received, and its rejection was error.

*Jackson vs. Hayner, 12 John. R. 469, and cases cited sub. 8 of brief.*

VI.   The contract signed by defendant at the time of signing promissory note (contract attached to answer) reciting the giving of a promissory note by defendant, it was proper for us to show that it had been misread to defendant to rebut the inference arising from such recital, and it being a part of the same transaction, such proof tended to establish the alleged fraud.   The evidence tending to establish this was therefore improperly rejected.

VII.   Defendant was not estopped from contradicting such contracts.   A party to a written instrument is not estopped in an action by another party not founded on the instrument, to dispute the facts admitted in such instruments.

*Carpenter vs. Butler, 8 Mees. and W. 209; Reed vs. McCourt, 41 N. Y. 435; Champlain vs. Valentine, 19 Barb. 488; 1 Phillips' Ev., 4 Am. Ed. 472–3 and cases cited; Starkie's Ev., 8 Am. Ed. 611–650 [725–7]; McCrea vs. Purmort, 16 Wend. 461; Abbott vs. Hardwick, 1 Man. and G. 791; Rex vs. Llanagan, 2 Barn and Ad. 616; Rex. vs. Wickem, 2 Ad. and Ellis, 515; 2 Smith Leading Cases, 707-710 et seq.; Merryfield vs. Perrit, 11 Cushing, 595–8; Henson vs. Carver, 11 Ohio S. R. 339; Bolles vs. Beach, 2 Zabriske, 695; Gully vs. Grubbs, 1 J. J. Marsh, 390; 2 Parsons on Con. 556–7, and note; Van Emmen vs. Staunchfield & Brown, 10 Minn. 266; 1 Greenleaf Ev. sec. 279; Straden vs. Lambeth, 7 B. Monroe, 589.*

Mitchell & Yale, for Respondent, cited the following authorities: *Moore vs. Turbeville, 2 Bibb, 602; Sanders vs. Hatterman, 2 Ired. 32; Farrar vs. Alston, 1 Dev. 69; Falton vs. Hood, 34 Penn*

*St.* 365; *Lewis vs. Jones,* 4 *B. & C.* 506; *Russell vs. Branham,* 8 *Blackford,* 277; *Starr vs. Bennett,* 5 *Hill,* 303.

*By the Court.*—McMILLAN, J.—In an action upon a promissory note, the general rule is that the possession of the note regularly transferred to the plaintiff, is *prima facie* evidence of ownership in him, and that he is a holder for a valuable consideration; nor is he required to give any other evidence of such facts until the defendant has shown that the note was never delivered by him, or was obtained from him, or some intermediate party, through some undue means, as by fraud, felony, duress, or the like. 2 *Greenl. Ev.,* § 172; *Story on Prom. Notes,* § 196.

"But when negotiable paper has been stolen, or lost, or obtained by duress, or procured, or put in circulation by fraud, proof of these circumstances may be given against the plaintiff, and on such proof being given, it is incumbent on the plaintiff to show himself to be a holder *bona fide,* and for a valuable consideration; otherwise he is considered as standing in no better situation than the former holder, in whose hands the instrument received the taint." *Beltzhoover vs. Blackstock,* 3 *Watts,* 20; *Knight vs. Pugh,* 4 *Watts,* 445; *Fitch vs. Jones,* 5 *Ell. & Bl.* [85 *Eng. Com. L.*] 238.

The reason of this rule is found in Fitch vs. Jones, the case last cited, which was an action by an indorsee against the maker of a note. "Proof that a negotiable instrument was affected with fraud or illegality in the hands of a previous holder, raises a presumption that he would endorse it away to an agent, without value, and consequently calls on the plaintiff for proof that he gave value."

In order, however, to admit this proof on part of the defendant, the facts constituting the defence relied on, must, under our system of pleading, be set up in the answer. The defence

relied on in this case by the defendant, the maker of the note, is that the note was obtained from him by Ensign, the payee, through fraud, and without any consideration. The facts relied on as constituting the fraud and want of consideration as to the payee of the note, are, substantially, the following: That at the same time the note was executed, a contract was entered into between the defendant and Ensign, by which defendant was to become the agent of Ensign for the sale of a certain "seeder and cultivator;" that the note was executed in pursuance of, and in consideration of said contract. The contract, as verbally made and agreed upon, is fully set up in the answer. The answer also alleges, that at the time of executing the note, a writing, which is Exhibit "A" in the answer, purporting to be the contract between the parties, was signed by each of them; that the writing does not truly set forth the contract, but that the contract as made between the parties is that set forth in the answer as the verbal contract. The alleged fraud is, first, "That the said Ensign also represented at the same time, that a paper which he presented to the defendant for his signature was in accordance with the said contract, and in pursuance thereof, and only made the defendant liable to pay him the sum of two hundred dollars when one half the profits on the sale of said 'seeder and cultivator' should, in the aggregate, amount to that sum; that said representations were intentionally false, and by the said Ensign intended to deceive and mislead the defendant, and the defendant misled and deceived thereby, signed the paper presented to him as aforesaid, *which is the promissory note* set out in the complaint."

Second, that this contract, as made and agreed upon between the parties, was as alleged in the answer, and that the writing exhibit "A" aforesaid, does not truly set forth the said contract; "that said Ensign fraudulently and intentionally misread said writing to defendant and misstated to him

the contents thereof, and the defendant, relying on and be-lieving said misstatements as to the contents of the writing, and his reading of the said writing, signed the same; that he did so under a misapprehension of its contents, and misled by the false and fraudulent practices of said Ensign aforesaid."

As to the representations in regard to the *note*, we think they are not sufficient to constitute a fraud in law of which the defendant can take advantage upon a defence to the note. The representations, as alleged, must be taken to be represen-tations as to the legal effect of the note, and not as to the con-tents of the writing.

The contract which the answer alleges was in fact made be-tween the defendant and Ensign, is essentially different from the written instrument signed by the parties. There would seem to be no doubt that the note sued upon, and the con-tract really made between the parties, whatever was its char-acter, were parts of the same transaction, and as between the parties, at least, must qualify each other. Nor perhaps will it be disputed, that if the contract set up in the answer is, as the defendant avers it to be, the real contract entered into at the time, and the defendant is permitted to prove such fact, that the entire want of consideration in the note would be es-tablished. But want of consideration alone, between the maker and payee, is not sufficient in an action by an indorsee to whom the note has been regularly transferred, to require proof from such indorsee that he gave value for it. There must also be the further element of fraud, or illegality between the original parties for that purpose. *Fitch v. Jones, supra.*

If the note and contract are parts of the same transaction, and the contract enters into the consideration of the note, so that the note is without consideration if the contract is void, then, if through the fraud of the payee the contract *is* void, the fraud taints the consideration of the note, and under the

rule above stated, proof thereof calls upon the indorsee for proof that he gave value for the note.

Upon the trial of the cause, the defendant having testified that at the time of making the note in question he signed the contract, exhibit "A," in the answer, his counsel asked the witness this question, "Is the written contract in accordance with the agreement which you entered into with Ensign?" to which the plaintiff objected as immaterial, irrelevant, and because there is no foundation laid for it in the pleadings. The objection was sustained and defendant's counsel excepted. The counsel for the defendant then offered to prove by this witness, among other things: "First; that this witness is a Norwegian, and cannot read the English language, except imperfectly, and not at all, when written by an ordinary penman. Fourth; that Ensign falsely and intentionally misstated the contents and terms of said written contract (attached to the answer as exhibit 'A,') to him, and misread said contract to him, and that relying on said misstatement and false reading, the defendant signed the writing. Fifth; that the contract in fact entered into between the parties was in terms and in fact as alleged in the answer, and that the terms and language of the writing, as read to and stated to defendant by Ensign, corresponded to and agreed with the verbal contract set up in the answer. Sixth; that he, defendant, could not without great difficulty, and taking much time, read said note and contract." To each of these offers the plaintiff's counsel separately objected as being immaterial and inadmissible under the pleadings; and the court sustained the objection as to each, and the defendant excepted to the ruling of the court, made as aforesaid, as to each offer.

The facts alleged in the answer, and which it is claimed constitute a fraud upon the part of Ensign, are that he fraudulently and intentionally misread the contract, and misstated

to the defendant the contents thereof.   There can be no doubt that these allegations refer to the contract in fact, that is, to the very words and contents of the instrument, and not to its legal effect.   Nor is there any necessity to argue that the facts alleged in the answer constitute an intentional, actual fraud upon the part of Ensign, which will vitiate the contract, if Johnson, the defendant, might rely upon them.   The defendant might rely upon Ensign's reading of the contract, and his representations as to its contents, in two cases : *first*, if he had not equal means of knowing, or ascertaining their falsity ; second, if Ensign acted in such a manner as to induce him to forbear making inquiries.   *Story on Contracts*, § 510 ; 1 *Story's Eq.* § 199 ; *Vernon v. Keyes*, 12 *East*, 632.

The answer distinctly avers that the defendant did rely upon and believe Ensign's reading of the contract, and his representations as to the contents of the instrument, and was deceived thereby.   But it does not aver specifically any inability of the defendant to read the English language, except imperfectly, or otherwise.   The plaintiff contends that in the absence of such averments, proof of such facts were not admissible ; and in order that misrepresentations may constitute a valid defence, it must appear, not only that the injured party did in fact rely on the fraudulent statements, but that he had a right to rely upon them.

It is true that where fraud is alleged, a general charge of fraud is insufficient, and that the material facts constituting the fraud must be stated, but a general statement of the matters of fact constituting the fraud, is all that is required ; and it is not necessary to charge minutely all the circumstances which may conduce to prove the general charge, for these circumstances are properly matters of evidence, which need not be stated in order to let them in as proof.   *Story's Eq. Pl.*, §§ 28, 252 ; *Chicot v. Lequesne*, 2 *Ves.* 318.

Cummings v. Thompson.

It is also true, that under a general allegation of fact, the specific facts and circumstances admissible in support of such general averment, must be such as the injured party may legally rely upon; but as they need not be particularly stated it can only be necessary that this characteristic be apparent in the evidence.

It was clearly not necessary, within this rule, to state in the answer the manner of the misreading, or any of the circumstances surrounding the parties, or the particular representations made by Ensign; all these facts would be admissible under the general allegations in the answer, and the representations and reading being in their nature representations of fact, it may well be that proof of all the facts (excluding for the present the defendant's inability to read) may show, that the defendant might, and did rely upon the misreading of the contract, and the misrepresentations of its contents, and was induced thereby to forego the reading of the instrument himself. So far, therefore, as the question put to the witness, and the proof of the facts embraced in the fourth and fifth offers of the defendant are concerned, they were proper, and should have been allowed.

We are also of opinion that under the allegation that the defendant relied upon and believed the false reading and misrepresentations of the contract by Ensign, and was misled thereby, it was competent for the defendant to prove the facts offered to be proved relating to his inability to read. The averment that the defendant relied on, and believed the reading of the contract, and the representations of its contents by Ensign, is an allegation of fact, and essential to constitute a fraud. If the defendant could not read the contract, or could not read it without great difficulty, and taking much time, it would tend to show that he had not equal means with Ensign of knowing, or ascertaining the falsity of the reading

and representations of the latter, as well as that the defendant was induced to forbear further inquiries, and rely upon Ensign's statements and might therefore, properly rely upon such statements and representations. And it would seem to be apparent, that the evidence offered of the inability of the defendant to read, in connection with the facts that he executed the contract without reading it, or further inquiry, would tend directly to show that in thus executing the instrument, he did *in fact* rely upon, and was misled by Ensign's reading and misrepresenations of it. The defendant's inability to read is, therefore, merely a specific fact which goes to support the general allegations in the pleadings, and need not be specially stated.

The question arising in this case is clearly distinguishable from a case in which a special disability is relied on to defeat a voidable instrument; there such special disability must be pleaded.

The court, therefore, erred in excluding the evidence offered by the defendant, relating to his inability to read.

We are not to be understood in this case, as intimating an opinion, whether or not, other things being equal, the intentional misreading of an instrument by one party to the other, in an essential matter, with intent to deceive such party, will of itself constitute a fraud which the law recognizes; that question does not arise.

The evidence upon the question of fraud as between the maker and payee of the note having been excluded by the court, all inquiry as to a mere want of consideration between subsequent indorsees of the note, was, of course, properly excluded.

The answer alleges, "That as to each and every statement, allegation, matter or thing in the complaint set up except as hereinbefore admitted, the defendant alleges that he has not

Cummings v. Thompson.

sufficient knowledge or information to form a belief, and, therefore, denies the same.   That if the said note has been transferred to Grant & Lalor, as charged, or to said plaintiff, as charged, this defendant alleges on his information and belief, that each of them, at the time of transfer to him, had notice that it was obtained by fraud and false representations, and without any consideration as aforesaid."

These allegations are sufficient to admit affirmative proof by the defendant, that the indorsees, including the plaintiff, had notice of the fraud of the payee in the making of the note ; and if such fraud and notice should be established, a complete defence to the note, as between the defendant and plaintiff, would be made out.   The evidence offered by the defendant tending to show fraud on the part of Ensign, the payee, in the making of the note, was, therefore, admissible ; first, for the purpose of calling upon the plaintiff for proof that he is a holder for value, and, second, for the purpose of enabling the defendant to follow it by proof that the indorsees, including the plaintiff, had notice of the fraud, and thereby establishing a complete defence to the note.

The judgment must be reversed, and a new trial granted.